# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| RAFAEL RIVERA, individually, and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No: _____ |
| | ) | |
| NORTHEAST GEORGIA HEALTH SYSTEM INC., | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## COMPLAINT

COMES NOW Plaintiff Rafael Rivera ("Plaintiff") on behalf of himself and others similarly situated, and through the undersigned counsel of record files this Complaint against Northeast Georgia Health System, Inc. showing the Court as follows:

## NATURE OF THE COMPLAINT

1.    This is a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), brought on behalf of plaintiff and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, as follows:

> All medical caregivers employed within the three years preceding the filing of this action at Northeast Georgia Health System Inc., whose pay was subject to an automatic meal period deduction even when they performed compensable work during the unpaid "meal break" (the "Collective Action Class").

2.      In addition to the FLSA claims, Plaintiff brings this action as a state-law class action on behalf of all medical caregivers who, at any time during the past three years are or were employed Northeast Georgia Health System, Inc., to recover all unpaid wages under O.G.C.A § 34-7-2 (the "Georgia state law claims").

3.      Plaintiff brings this action to obtain monetary and declaratory relief, along with liquidated and actual damages, attorneys' fees and costs to redress the unlawful employment practices described herein.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. § 1367.

5.      Defendant Northeast Georgia Health System Inc., ("NGHS" or "Defendant") is a Georgia corporation, and resides in this district.  Defendant does business in and is engaged in commerce in the State of Georgia.

6.      Venue is proper in this district pursuant to 29 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events and omissions that give rise to Plaintiff's claims occurred in this district.

## PARTIES

7.      Defendant is a corporation engaged in the industry of providing medical services.

8.      Plaintiff is an adult individual who resides in Cumming, Georgia.

9.     During all relevant times herein, Plaintiff was an "employee" of Defendant as defined by 29 U.S.C.§ 203(e).

10.     During all relevant times herein, Defendant was Plaintiff's "employer" as defined by 29 U.S.C. § 203(s) and is a qualified and licensed organization in Georgia that is entitled to do business in Georgia.

11.     Defendant's registered agent and CEO is Carol Burrell who may be served with Summons and Complaint in this action at 743 Spring Street, NE Gainesville, GA 30501.

## FACTS

12.     This action is filed on behalf of all non-exempt employees of Defendant employed at NGHS as medical caregivers whose pay is subject to an automatic meal break deduction even when they perform compensable work during their meal breaks.

13.     Plaintiff is a respiratory therapist ("RT") in the respiratory therapy department at NGHS.

14.     This action is also filed on behalf of RTs and employees in other departments of hospitals operated by NGHS who are or may be (on information and belief) similarly subject to automatic meal break deductions even when they perform compensable work during their meal breaks (the "Non-RT Class Members")  (The RTs and the Non-RT Class Members are referred to as the "Putative Class" or as "similarly situated employees").

15.     The governing regulation provides that Defendant cannot shield itself from a FLSA overtime claim simply by adopting policies that prohibit unreported overtime and that place on their employees the onus of recording their own overtime:

> [I]t is the duty of the management to exercise its control and see
> that the work is not performed if it does not want it to be performed.

> It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so. 29 C.F.R. § 785.13.

16.    The employer who wishes no such work to be done has a duty to see it is not performed. The employer cannot accept the benefits of the work performed without including the extra hours in an employee's weekly total for purposes of overtime compensation.  If the employer has the power and desire to prevent such work, the employer must make every effort to do so.

17.    Plaintiff is an "employee" of Defendant, as that term has been defined by the FLSA, 29 U.S.C.S. § 201 et seq., 29 U.S.C. § 203(e).

18.    Plaintiff was hired by Defendant in August 2000 and remains employed.

19.    Plaintiff is a Board Certified Respiratory Therapist (RRT-NPS) with over 20 years of critical care and ICU experience.

20.    For the last three years, the hospital has used a Kronos time system that required employees to swipe their identification badge when they started work and again when they ended work. The Kronos system was only used twice a day, at the start of the day and at the finish.

21.     Plaintiff and similarly situated employees are supposed to be given a 30-minute meal break for each shift. The employees do not clock out and in for any of these mandatory breaks, but the 30-minute reduction in time and pay is automatically deducted from each paycheck by the Kronos engaged by Defendants.

22.    Plaintiff and similarly situated employees are required to carry a duty cell phone with them during the alleged meal break, and remain on call during every such break period. Plaintiff and similarly situated employees are required to answer the phone even when on the

mandatory meal break, and the Kronos system does not account for the compensable labor performed during the meal breaks.

23.    Plaintiff is therefore paid for only 12 hours of each 12.5 hour shifts, and/or 15.5 hours of each 16.5 hour shift he works on the presumption that he was receiving a 30-minute meal break. Defendant supervised and controlled the Plaintiff's work schedule and that of the putative class.  Defendant set Plaintiff's rate of pay, controlled the terms and conditions of Plaintiff's employment and maintained his employment records.

24.    Plaintiff and his co-workers rarely took a full 30-minute lunch break. Usually Plaintiff and similarly situated employees go to the on-site cafeteria and pick up food to bring back to the unit and eat the meal while continuing to provide medical service to the patients on the unit, whether actively or inactively.  The Plaintiff and the other RTs assigned to the therapy unit generally took their breaks on the unit, as well.  All Respiratory Therapists are expected not to leave the hospital premises for meal breaks.  And on information and belief, none ever do because of the incessant work required during the alleged break periods.

25.    Plaintiff's supervisor regularly observe Plaintiff and his coworkers working through their meal breaks and made no efforts to ensure that Plaintiff and his co-workers received full uninterrupted meal breaks.   Supervisors are not only aware of the uncompensated work, they are also the cause of the work because they themselves frequently and predictably call the RTs during the alleged meal breaks.

26.     Plaintiff and the putative class members had available to them a message clipboard with blank sheets of paper where they could communicate with their supervisor in writing in the event they had any grievances.  This clipboard was publicly hung on the outside door of Operation

Manager's office located as far as a quarter of a mile away from Plaintiff and the putative class members' area of work.

27.    Defendant and the department supervisors are aware of the under-reporting and under utilization of the clipboard system.  The supervisors are aware that RTs are working through their meal breaks and are not compensated for this work.

28.    To the best of his knowledge Plaintiff and putative members of the collective class were not given the opportunity to correct the Kronos system when lunch breaks were not taken or when work was performed during the lunch breaks.

29.    To the best of his knowledge there was no ability for Plaintiff to record the time he worked during the meal break or to cancel the automatic deduction of the 30 minute meal break from his time record. To the best of his knowledge Plaintiff was never advised that if he failed to take a lunch break or if he worked during the lunch break he could leave early or receive a Kronos system adjustment or extra pay.  As a result, Defendant failed to accurately record the actual hours worked by the Plaintiff and the putative class by including any work performed during the lunch break.

30.    Defendant had the ability to modify the Kronos system to allow for more accurate time keeping when it was in the Defendant's interest to do so.  For example, the Kronos system was modified to include a "button" that was to be pushed if the employee was participating in continuing professional education and training classes. To Plaintiff's knowledge, the Kronos system was not modified, however, to provide a similar "button" that allowed the employees to cancel the automatic meal break deduction in situations when the employee missed a meal break.

31.    No instruction or training was provided to the Plaintiff about what steps could be taken if a meal break was missed. There was no requirement to notify the supervisor if a meal break was missed.

32.    The Plaintiff was never advised that he was required to take a meal break.

33.    Given the demands of the health care industry and staffing shortages, Defendant knows that in order to accomplish the tasks they assign to Plaintiff and putative class members, hospital caregivers have to work through their unpaid "meal breaks."

34.    Under the Defendant's meal break deduction practice and policy, Defendant's computerized time and attendance system automatically deducts a 30-minute meal period per work shift.   It is possible or likely that this is occurring in other departments in Defendant's facilities.

35.    Upon information and belief, Defendant maintains the same meal break deduction practice and policy at all of its facilities.   Accordingly, all non-exempt employees of Defendant are subjected to its policy and practice regarding "meal breaks."

36.    Under Defendant's practice and policy, Defendant improperly and illegally shifts the burden to Plaintiff and the putative class members to ensure that nonqualifying "meal breaks" are not deducted from their pay.

37.    Plaintiff and putative class members often perform compensable work for Defendant during their uncompensated "meal breaks."

38.    Defendant does not ensure that Plaintiff and the putative class members are completely relieved of their work duties during their uncompensated "meal breaks." To the contrary, Defendant ensures that class members are not on break, but rather remain on call during the unpaid meal break.   As such, Plaintiff and putative class are routinely not completely relieved of their job duties during their uncompensated "meal breaks."

39.    Plaintiff and putative class members routinely are required to stay at their duty post during their uncompensated "meal breaks."

40.    Defendant does not prohibit Plaintiff and putative class members from working during their "meal breaks" and routinely permits or demands Plaintiff and putative class members to perform such work.

41.    Further, Defendant fails to ensure that unauthorized work is not being performed during employee "meal breaks."

42.    In fact, although Defendant automatically deducts 30 minute meal periods, Defendant expects Plaintiff and the putative class members to be available to work throughout their shifts and consistently require its employees to work during unpaid "meal breaks."

43.    Plaintiff and putative class members are expected to eat without any change in demands from patients or relief by additional staff.  Indeed, Plaintiff and putative class members are often required to respond to code blues (i.e, cardiac arrests), rapid response and medical emergency team calls, staff phone calls, as well as requests by patients, co-workers and management, during unpaid "meal breaks."

44.    Defendant knows and/or has reason to believe that Plaintiff and putative class members perform work during their unpaid "meal breaks."  Indicative of this, Plaintiff and putative class members perform work for Defendants, on Defendants' premises, in plain sight, and often at management's request (and at times in view of management) during their unpaid "meal breaks."

45.    Even though Defendant knows that Plaintiff and the putative class members are working during "meal breaks," Defendant fails to compensate Plaintiff and class members for their work, electing instead to accept the benefits of Plaintiff and putative class members' uncompensated work.

46.    In addition, Plaintiff and other putative class members regularly work after their scheduled shift ended for no remuneration.  Importantly, this work occurs after Plaintiff and class members' time ceased being recorded for that day.  Despite this "off-the-clock" work, Defendant does not provide additional compensation to Plaintiff or other class members, nor do supervisors take ameliorative measures to ensure that such "off-the-clock" work ceased occurring.

47.    As a direct result of Defendant's aforementioned employment practices, Plaintiff and putative class members often work without compensation resulting in their working in excess of forty hours per week without collecting statutory overtime wages.  Plaintiff worked in excess of forty hours per week on many occasions.  Plaintiff worked through his meal breaks and was not compensated for this time, which routinely pushed his workload over the forty-hour limit.

48.    Plaintiff often worked without compensation, including, but not limited to occasions when he participated in 4-hour ATO standby sessions on behalf of Defendant after being called off for duty.  This demanded Plaintiff to remain within the hospital area in the event patient census increased and/or a last-minute RT staff callout. Plaintiff also participated in four out-of-state FEMA training classes (each one taking 40 hours) on behalf of Defendant.

49.    Additionally, Plaintiff often worked without compensation, including, but not limited to, occasions when he participated in 4-hour standby sessions for FEMA (Federal Emergency Management Agency) on behalf of Defendant.  These sessions demanded Plaintiff to remain within the hospital area in the event a co-workers' shift was cancelled, and required him to work in excess of forty hours per week.

50.    Evidence generally reflecting the number of uncompensated hours worked by each class member and the compensation rates for the relevant work periods is in the possession of Defendant.

51.     While Plaintiff is unable to state at this time the exact amount owed to the putative class, and how many departments employ a meal-break system like the RT department, Plaintiff believes that such information will become available during the course of discovery.

52.     Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. See *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

## CLASS/COLLECTIVE ACTION ALLEGATIONS

53.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

54.     Plaintiff brings this action on behalf of the Collective Action Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b), and for claims under the O.G.C.A § 34-7-2 *et seq.*, and the Georgia RICO Statute, OCGA § 160-14-4(a), and ERISA § 502(a)91)(B) et seq., as a class action pursuant to Fed.R.Civ.P. 23.

55.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims under Georgia common law and Georgia RICO and ERISA may be pursued by all similarly-situated persons who do not opt-out of the Collective Action Class pursuant to Fed.R.Civ.P. 23.

56.     The members of the class are numerous. While the exact number of the members of the Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are dozens of RTS who will opt in and likely hundreds of Non-RT Class Members.

57.    There are questions of law and fact common to the Class which predominate over any questions affecting individual members only. These factual and legal questions include:

  a.    Whether Plaintiff and class members were expected to and/or mandated to regularly work during unpaid meal breaks;

  b.    Whether Defendant failed to pay Plaintiff and class members for all hours that they worked because of the fact that they automatically deducted 30-minute meal periods despite the fact that Plaintiff and class members regularly performed compensable work during "meal breaks";

  c.    Whether Defendant failed to pay Plaintiff and class members all overtime compensation due to them by virtue of its meal break deduction practice and policy;

  d.    Whether Defendant failed to properly contribute to retirement plans due to its underpayment to class members;

  e.    The correct statute of limitations for Plaintiff's and class members' claims;

  f.    The correct method of calculating back overtime pay;

  g.    Whether Plaintiff and class members are entitled to compensatory damages, and if so, the means of measuring such damages;

  h.    Whether Plaintiff and class members are entitled to restitution;

  i.    Whether Defendant is liable for pre-judgment interest; and

  j.    Whether Defendant is liable for attorney's fees and costs.

58.    Defendant has acted (and/or refused to act) on grounds generally applicable to the Class.

59.    The claims of the representative Plaintiff are typical of the claims of the Class in that Plaintiff was denied wages as a result of Defendant's uniform policy of not compensating its non-exempt employees for all hours worked. This is the predominant issue which pertains to the claims of each and every class member.

60.     The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

61.     Furthermore, even if any member of the Class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system. The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

62.     Plaintiff will fairly and adequately protect the interests of the Class, as his interests are in complete alignment with those of the entire class, i.e., to prove and then eradicate Defendant's illegal employment practice of not paying legally-mandated wages to its non-exempt employees.

63.     Counsel for Plaintiff will adequately protect the interests of the Class.  Such counsel is experienced with employment/class litigation.

64.     Plaintiff and the Class he represents have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendant's pay practices.

65.     Defendant has engaged in a continuing violation of the FLSA, ERISA, and Georgia RICO and common laws.

66.    Plaintiff, as well as the individuals he represents, was denied legally-mandated wages as a result of Defendant's pay practices. This violation was intended or foreseeable by Defendant and was willfully done.

67.    Defendant's action in denying overtime wages to Plaintiff was intentional and constitutes a willful violation of the FLSA.

68.    Defendant has engaged in a continuing violation of O.G.C.A § 34-7-2.

**COUNT I – FLSA**
**(Plaintiff and the Collective Class)**

69.    The allegations set forth in the preceding paragraphs are incorporated herein.

70.    At all relevant times, Defendant has been an employer engaged in interstate commerce consistent with 29 U.S.C. §§206(a) and 207(a). At all relevant times, Defendant employed Plaintiff and each member of the Collective Action Class consistent with the terms of the FLSA.

71.    At all relevant times, Defendant has had annual gross revenues in excess of $500,000.00.

72.    As a consequence of Defendant's employment practices whereby it automatically deducts thirty minutes for meal breaks from the pay of hourly, non-exempt employees, Plaintiff and class members were denied statutory overtime wages.

73.    Plaintiff and class members were employees of Defendant within the meaning of the FLSA and, as such, were entitled to the benefits of the FLSA's overtime wage requirements.

74. Defendants' policy of denying Plaintiff and class members overtime wages represents and results in a violation of the FLSA's wage requirements.

75. Defendant has failed to pay appropriate overtime wages under the FLSA.

76. Defendant's violations of the FLSA were willful and in bad faith.

77. Pursuant to the FLSA, 29 U.S.C. § 216, Plaintiff and the putative class are entitled to recover the unpaid overtime wage differential, liquidated damages in an equal amount to unpaid overtime, attorneys' fees, and the costs of this litigation incurred in connection with these claims.

### COUNT II – O.G.C.A § 34-7-2
### (Plaintiff and the Collective Class)

78. The allegations set forth in the preceding paragraphs are fully incorporated herein.

79. The Georgia Code Annotated § 34-7-2 provides in relevant part:

> Georgia requires employers, shall pay all employees:
> (i) all wages due on paydays selected by the employer.
> . . the full net amount of wages or earnings due the employees for the period for which the payment is made.

80. Plaintiff and the Collective Class are employees of Defendant within the meaning of O.G.C.A § 34-7-2, as such, is entitled to timely payment of all wages due to them.

81. Defendant is an employer within the meaning of the same provision.

82. Defendant's policy of subjecting Plaintiff and the Collective Class' pay to automatic meal break deductions even when they performed compensable work results in an underpayment in violation of O.G.C.A § 34-7-2.

83.    Plaintiff and the Collective Class have entered into an agreement with Defendant pursuant to which they are to receive certain hourly wages, in compensation for their work for Defendant.

84.    More than two weeks have elapsed from the date on which Defendant was required to have paid the wages owed to the Plaintiff and the Collective Class for all hours of work. Defendant has no bona fide reason for withholding the wages owed to the Plaintiff and the Collective Class for their uncompensated for time.

85.    Any consent or agreement by Plaintiff and the Collective Class whereby they agreed to forgo payment for the time they worked in excess of forty hours per workweek is unenforceable as contrary to public policy.

86.    Defendant's failure to pay wages for all time worked, as required by Georgia law, represents a violation of its agreement with Plaintiff and the Collective Class.

## COUNT III – UNJUST ENRICHMENT / QUANTUM MERUIT
### (Plaintiff and the Collective Class)

87.    The allegations set forth in the preceding paragraphs are fully incorporated herein.

88.    Plaintiff brings this claim in addition to his claim under the O.G.C.A § 34-7-2.

89.    Any agreement or consent by the Plaintiff and the Collective Class to work during their "meal breaks" is an illegal agreement in violation of the public policy of Georgia intended to protect employees from being denied payment for all hours worked.

90.    Any such agreement is unenforceable because it is illegal.

91.    Plaintiff and the Collective Class were not paid wages for all of the time they worked for Defendant.

92.     Defendant knew and appreciated that it was receiving the benefit of the uncompensated work performed by the Plaintiff and the Collective Class.

93.     Defendant retained the benefit of the uncompensated work performed by Plaintiff and the Collective Class under circumstances which render it inequitable and unjust for Defendant to retain such benefits without paying for its value.

94.     Defendant was unjustly enriched by requiring the Plaintiff and the Collective Class to work without payment for all hours worked.

95.     Plaintiff and the Collective Class rendered valuable services to the Defendant.

96.     The services were accepted, used and enjoyed by the Defendant.

### COUNT IV – RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT AND MAIL AND WIRE FRAUD
### (Plaintiff and the Collective Class)

97.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

98.     18 U.S.C. § 1962(c) provides a private cause of action for RICO to an injured person where the conduct of an enterprise creates a pattern of racketeering activity that is the proximate cause of the individual's harm.

99.     The mail and wire fraud statute (18 U.S.C. §§ 1341, 1343) makes it criminal for anyone to use the mails or wires in furtherance of a scheme to defraud. The fraudulent statements themselves need not be transmitted by mail or wire; it is only required that the scheme to defraud be advanced, concealed or furthered by use of the U.S mail or wires.

100.    The Defendant mailed an employment contract and paystubs to Plaintiff.

101.    Defendant stated that the Plaintiff would pay him  set hourly rate bi-weekly deducting meal breaks.  In reality, the Plaintiff performed compensable services for Defendant during his 30-minute meal break for each working day during the last three, hence it was not paid his required hourly rate for those intervals but was rather paid $0 for his compensable work during meal breaks during the past 3 years of working with the Defendants.

102.    The meal-break deduction applicable to compensable time intervals was part of an illicit scheme by the defendant to further lure the respiratory therapists into working greater hours without leaving the hospital premises, and to further persuade the federal government pursuant to social security records that it was going to pay the Plaintiff hourly despite having no intention of doing so (since impermissible lunch deductions reduce hourly compensable rate) at the time that the Defendant mailed its employment contract to Plaintiff.

103.    The Defendant's communication to the Plaintiff which promised him a fixed hourly compensation was a fraudulent communication that the Defendant used to exploit the Plaintiff and obtain additional earnings.

104.    Defendant has engaged in a pattern of such mail and wire fraud by impermissibly deducting pay for compensable work performed during break hours by Plaintiff and other respiratory therapists similarly situated. Defendant, has thus violated RICO. The mailing of the paystubs and employment contract without specifying Defendant's practice of applying pay deductions to compensable work hours, was to supplement the Defendant's fraudulent scheme of underpaying respiratory therapists.

105.    The Plaintiff and other putative members of the class have suffered harm as a result of the Defendant intentionally and knowingly false communications that have furthered their

enterprise of understaffing the hospital and receiving services from respiratory therapists without paying them what they are entitled.

106.    The injuries suffered are lost wages, lost opportunities to pursue work at hospitals and mental, emotional and physical distress.

107.    Defendant's misrepresentation was intentional and willful.

108.    As such, the conduct of the defendant constitutes conduct to further an enterprise through repeated acts of mail fraud, wire fraud, and intentional fraudulent misrepresentation.

## COUNT V – GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATION (OCGA § 16-14-3 et seq.)

### (Plaintiff and the Collective Class)

109.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

110.    At all times relevant to this action, Defendants have engaged in an ongoing pattern of racketeering as defined by OCGA § 16-14-3(8).

111.    Defendant committed more than two such acts within the past four years.

112.    For purposes of Georgia RICO claims, the racketeering activity includes, inter alia, an ongoing patter of theft and conversion, in violation of OCGA § 16-8-2 and 16-8-4.

113.    Defendant has violated these statutes by systematically and intentionally demanding Plaintiff to work hours for which he was not paid and withholding his wages in violation of state and federal law.

114.    Each violation of OCGA § 16-8-2 and 16-8-4 was performed by Defendants and its supervisor and managers, acting in concert. Such acts of theft constitute an act of "racketeering activity" as defined in § 16-14-3(5)(A)(xii).

115.    Defendant has violated OCGA §16-14-4 by acquiring and maintaining an interest in the personal property and wages of its underpaid employees.

116.    The Plaintiff and other putative members of the class have suffered harm as a result of the Defendant's acts and are entitled to damages in an amount to be proven atrial plus treble damages and attorneys fees as allowed under the statute.

## COUNT VI - FRAUD
### (Plaintiff and the Collective Class)

117.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

118.    A party has a cause of action for common law fraud when (1) representation of fact was made, (2) the representation was material and the person relied on the representation, (3) the person making the representation knew of its falsity, and (4) the injured party suffered as a result of the reliance of such false representation.

119.    Defendant—while promising to pay the Plaintiff a fixed hourly wage—directly took from his paycheck deductions as meal breaks for hours on which he performed compensable service. Defendant intended solely to defraud the Plaintiff and by-pass the laws of Georgia and the United States.

120.   The Defendants promised the Plaintiff a fixed hourly wage without any intent of paying him the full number of hours worked, only those compensable after the impermissible deductions.

121.   Defendant, thus, made fraudulent misrepresentations, and the Plaintiff relied on those fraudulent misrepresentations and provided services to the Defendant.

122.   Defendant's unconscionable acts are fraudulent, and they were committed intentionally.

## COUNT VII - CONVERSION
### (Plaintiff and the Collective Class)

123.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

124.   A party has a cause of action for conversion when (1) the plaintiff has an exclusive right of possession, (2) into which the defendant, (3) intentionally, (4) interferes with that right.

125.   Plaintiff had a right of possession to the wages which he earned as an employee of the Defendant.

126.   The Defendant intentionally deducted expenses from his wages for items that were not for the benefit of the Plaintiff.

127.   As such, the expenses taken from the Plaintiff were taken unlawfully by the Defendant as the Defendant never had a right to deduct these expenses from the Plaintiff's pay.

128.   The Defendant is liable for conversion.

## COUNT VIII - ERISA § 502(a)(1)(B) ─ Recovery and Enforcement of Benefits
### (Plaintiff and the Collective Class)

129.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

130.    Plaintiff was a participant in a 401(k) plan and other retirement benefits due to his long-term employment with Defendant (the "Plan").  The Plan was a pension benefit plan within the meaning of ERISA Section 3(2)(A), 29 U.S.C. § 1002 (2)(A) and is fully subject to ERISA.

131.    Plaintiff and other members of the putative ERISA Class were eligible to participate in the Plan under the Plan's terms.

132.    Defendants wrongfully underpaid the Plan due to the illegal underpayment to Plaintiff.

133.    Defendant has acted arbitrarily and capriciously and have wrongfully denied benefits to Plaintiffs and the other members of the Class.

134.    As a result of these actions, Plaintiffs and the other members of the Class have been damaged and are entitled to payment of benefits, statutory penalties, attorneys' fees, costs, and such other and further equitable relief as the Court finds appropriate.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Grant Plaintiff a trial by jury as to all triable issues of fact;

(B) Grant conditional certification and provide notice of this action to all similarly situated individuals, and certify a federal class under Fed.R.Civ.P. 23;

(C) Enter judgment against Defendant and awarding Plaintiff and the Collective Class unpaid wages pursuant to the FLSA, 29 U.S.C. §§ 206(d), 207, and 216, liquidated damages as

provided by 29 U.S.C. § 216, pre-judgment interest on unpaid wages, court costs, expert witness fees, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216, and all other remedies allowed under the FLSA; and,

(D) Grant declaratory judgment declaring that Plaintiff and the Collective Class' rights have been violated and that Defendant willfully violated the FLSA;

(E)  Grant Plaintiff relief for violations of state and federal RICO laws, including treble damages pursuant to OCGA § 16-14-6(c);

(F)  Grant Plaintiff relief for violation of O.C.G.A § 34-7-2;

(G)  Grant Plaintiff relief for unjust enrichment and quantum meruit;

(H)  Grant Plaintiff relief for fraud and conversion;

(I)   Grant Plaintiff relief under ERISA (29 USC § 1132);

(J) Grant Plaintiff and the Collective Class leave to add additional state law claims if necessary;

(K)  Award attorneys' fees and costs for time spent litigating both the entitlement to and amount of attorneys' fees and costs incurred throughout the entire engagement and investigation and settlement of this claim, including the reasonableness thereof;

(L)   Award Plaintiff pre-judgment and post-judgment interest on all amounts due including without limitation, treble damages attorneys' fees and costs;

(M)  A Declaration that Defendant has violated state and federal law with respect to its payment of hospital workers;

(F) Award Plaintiff and the Collective Class such further and additional relief as may be just and appropriate.

## DEMAND FOR JURY TRIAL

**Plaintiff demands a jury trial on all triable issues of fact and damages.**


Dated this 19th day of April, 2018

<u>/s/ Howard P. Slomka</u>
Howard P. Slomka, Esq.
GA Bar #652875

**Slipakoff and Slomka P.C**
*Attorney for Plaintiff*
2859 Paces Ferry Rd. SE.
Suite 1700
Atlanta, Georgia 30339
Tel. 404-800-4017
hs@myatllaw.com