IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| RAFAEL RIVERA, individually, and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff | ) | |
| v. | ) ) | Civil Action No: 2:18-cv-00053-RWS |
| NORTHEAST GEORGIA HEALTH SYSTEM INC., | ) ) | JURY TRIAL DEMANDED |
| Defendant | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW Plaintiff Rafael Rivera, through undersigned counsel, and files this Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss, and in support thereof shows the court as follows:

**FACTS**

Plaintiff filed this action against Northeast Georgia Health System Inc. ("Defendant") on April 24, 2018, specifically asserting claims against Defendant arising from its illegal pay policies (referred to herein as "Unpaid Work Policies") as follows:

- "Meal Break Deduction Policy:" Defendant's computerized time-keeping system automatically deducts one half-hour from employees' paychecks each day for a meal break even though Defendant fails to ensure that respiratory therapists and other employees were relieved from duty for a meal break, and employees did in

fact perform work during those breaks and were not paid for that time. (Complaint ¶¶ 21-24).

- "Unpaid Work Around Shifts Policy:" Defendant has failed to pay plaintiff and the putative class members for all time spent performing work before and/or after the end of their scheduled shift. (Complaint ¶¶ 42-46).

- "Unpaid Training Policy:" Defendant has failed to pay plaintiff and class members for all time attending compensable training programs, such as FEMA sessions. (Complaint ¶49).

Defendant knows that plaintiff and class members are performing such work pursuant to their Unpaid Work Policies, yet, fail to ensure that plaintiff and class members are compensated for such work. (Complaint ¶¶ 33-45). Further, by maintaining and propagating the illegal Unpaid Work Policies, Defendant deliberately misrepresented to plaintiff and class members that they were being properly paid for time worked, even though they were not receiving pay for all time worked including applicable pay.

As a result, Plaintiff's claims include violations of:

- FLSA, (29 U.S.C. § 216), arising from Defendant's Unpaid Work Polices whereby it automatically deducts thirty minutes for meal breaks from the pay of hourly, non-exempt employees and denying statutory overtime wages. (Complaint Ct.1);

- State Law Wage Claims (O.G.C.A § 34-7-2), due to Defendant's failure to pay plaintiff and the class members all wages due on paydays for the full net amount of wages due for the period for which the payment is made. (Complaint Ct.2);

- <u>Unjust Enrichment and Quantum Meruit</u> predicated on the basis that Defendant knew and appreciated that it was receiving the benefit of the uncompensated work performed by the Plaintiff and the collective class, and retained the benefit of the uncompensated work. (Complaint Ct.3);

- <u>RICO (18 U.S.C. § 1962(c)) and State RICO (OCGA § 16-14-3)</u>, resulting from Defendant's scheme to deceive plaintiff and deprive plaintiff of their entitlement to wages and overtime, including the use of the mail to send misleading payroll checks. (Complaint Cts.4-5);

- <u>Fraud and Conversion</u> based on Defendant's fraudulent representation that Plaintiff and the collective class members were to be paid a fixed hourly wage without any intent of paying then the full number of hours worked.  (Complaint Cts.6-7); and,

- <u>ERISA</u>, 29 U.S.C. § 1002 (2)(A) due to Defendant's failure to keep accurate records, including the hours worked each day, the total hours worked each week and the total overtime compensation for each work week, and failing to credit employees with all hours of service they were entitled to be paid or investigating whether such hours should be credited. (Complaint Ct.8);

Because plaintiff has set forth plausible allegations in his complaint for each cause of action, Defendant's motion seeking dismissal of Counts II through VIII should be denied.

**STANDARD OF REVIEW**

The Eleventh Circuit has consistently held that a complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir.1998).

Defendant is mistaken when it asserts that, "Plaintiff lacks standing to bring his RICO claim, because it has failed to allege with sufficient particularity either the basis of his mail and wire fraud allegation" (Def's. Mem. at 17). Plaintiff has no obligation to plead every fact that supports his claims. A Rule 12 (b)(6) motion may not be used to get disclosures of plaintiff's evidence, which is a process best left for discovery and not by impermissibly imposing a heightened pleading standard. To the contrary, it is Defendant's obligation to show that there are no facts that can support plaintiff's claims, an obligation that Defendant has not satisfied. Were this Court to determine that Defendant's Rule 12(b)(6) motion meets that standard, plaintiff would ask this Court for an opportunity to amend and preemptively undertake discovery.

**ARGUMENT**

**I.    DEFENDANT'S MOTIONS TO DISMISS SHOULD NOT BE GRANTED.**

Plaintiff's complaint states valid and alternative claims against the defendant for violations of FLSA, ERISA, RICO, Georgia wage statutes and tort law, and dismissal is not warranted. In order to survive a motion to dismiss, a complaint must merely plausibly suggest the conclusion that Defendant violated the law. Thus, in this case, the complaint must allege facts that (taken as true) plausibly suggest Defendant failed to pay plaintiff and the putative class members all wages due for compensable work including applicable overtime pay resulting in

violations of FLSA, ERISA, and/or RICO. See *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) (holding that to state a claim of conspiracy under the Sherman Act, complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made").

Here, plaintiff's Complaint gives defendant ample "notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Specifically, addressing the counts sought to be dismissed by Defendant, the plaintiff alleges the hospital has violated ERISA and RICO with sufficient particularity that these claims should not be dismissed. Defendant's violations of ERISA, and RICO are the consequence of its failure to ensure that plaintiff and class members are compensated for all hours worked.

Further, the complaint sufficiently establishes plaintiff's claims for unjust enrichment and fraud in that Defendant deliberately concealed and misled plaintiff and the members of the class, that they were paid properly and later benefitted from their unpaid work at the hospital. Plaintiff and class members should have been compensated for the time they worked for Defendant. Because Defendant's scheme to not pay for such time and the failure to properly credit such time to employees violated both ERISA and RICO, plaintiff's counts II through VIII of the complaint should not be dismissed.

Finally, Defendant's motion relies on the theory of federal pre-emption of state law claims. It entirely overlooks the plaintiff's prerogative to plead in the alternative. Were this Court to deny the existence of a federal claim at trial or summary judgment, then the state law claims would survive. The Court need not dismiss an arguably duplicative or pre-empted claim until the Court is prepared to grant the federal pre-empting claim.

## II. PLAINTIFF'S RICO CLAIMS SHOULD NOT BE DISMISSED.

Defendant claims that plaintiff's RICO claims are pre-empted by the FLSA and were not sufficiently pled. These arguments should be rejected.

### A. Plaintiff's RICO Claims Are Not Preempted By the FLSA.

Defendant's contention that plaintiff's RICO claims are preempted by the FLSA claims is legally and factually incorrect. Factually, plaintiff's RICO claims seek relief for wrongful conduct not covered or prohibited by the FLSA and therefore cannot be preempted by the FLSA. In any event, preemption does not apply legally because the FLSA is not the exclusive remedy for claims that it does cover. Moreover, Defendant's argument that RICO claims are preempted by FLSA, is disposed of by this Court's decisions in *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc*., 182 F.3d 851, 855 (11th Cir.1999), holding that "the [Supreme] Court has revisited the complete preemption doctrine only sparingly. . . the Court displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA." *Id*. at 856. The Court should decline Defendant's request to extend the preemption doctrine to RICO claims.

Defendant cannot claim that express, field or conflict preemption apply in this case. There is nothing in the FLSA expressly preempting RICO claims. Further, Defendant has failed to show that plaintiff's RICO claims stand as an obstacle to the accomplishment and execution of the full purposes of the FLSA.

First, plaintiff's RICO claims seek relief for Defendant's participation in the conduct of the enterprise's affairs through a pattern of racketeering activity by devising a scheme to obtain plaintiff's and class members' property by means of false or fraudulent representations some of which were made in the misleading paychecks which Defendant mailed. (Complaint ¶¶ 100-108)

Significantly, such claims are not covered by the FLSA and plaintiff has no remedy other than RICO and are clearly not preempted by the FLSA.

Second, to the extent that plaintiff's RICO claims do seek relief for claims covered by the FLSA, e.g. unpaid overtime, they are still not preempted because the FLSA does not provide an exclusive remedy. See *Roberts v. TJX Cos.,* No. 14-0746, 2015 WL 1062331, at *3 (M.D. Fla. Jan. 23, 2015) (citing *Hammond v. Lowe's Home Centers, Inc.*, 316 F.Supp.2d 975, 979 (D.Kan.2004)) ("FLSA does not create the exclusive remedy for unpaid wages, nor does the FLSA preempt a state law claim compensable pursuant to a contract but not the FLSA").

Thus, because plaintiff's RICO claims address conduct not prohibited by the FLSA and because the FLSA is not an exclusive remedy, plaintiff's RICO claims are not preempted. Additionally, in this circuit, RICO claims have been upheld in the employment compensation context. See e.g., *Williams et al. v. Mohawk Indus., In*c., No. 08-13446, 2009 WL 1476702 (11th Cir. May 28, 2009) (court certifies class action brought by former employees against employer alleging violations of RICO).

Accordingly, Defendant's argument that RICO claims are preempted by the FLSA should be rejected.

### B. Plaintiff's RICO Claims Are Compatible with the FLSA.

Defendant's state that "Plaintiff's allegations comprise run-of-the-mill wage and hour claims for unpaid overtime under the FLSA" (Dft.'s brief at 2). The cases cited by defendant are unpersuasive in this present context where plaintiff has alleged violations of the FLSA and RICO, not merely state wage and hour claims as defendant suggests.

Here, plaintiff's federal RICO claims are easily distinguishable from state wage and hour law claims asserted in the cases cited by Defendant. First, this Court has original subject matter

jurisdiction as a federal question under 28 U.S.C. § 1331, because plaintiff's RICO claims are based upon 18 U.S.C. § 1964(c) and 18 U.S.C. § 1962.  Secondly, plaintiff's RICO and FLSA claims are distinct and arise from separate sets of facts.  This factual distinction is absent in the cases cited by Defendant where the state wage hour violations and FLSA claims both rely upon the Defendant's failure to pay employees properly.  Further, courts have allowed RICO claims to proceed in the context of an FLSA collective action. See *Mohawk Indus., In*c., supra.

Moreover, dismissal of plaintiff's RICO claims is premature as plaintiff is currently seeking certification of his RICO claims.  See *Ortiz v. Fibreboard Corp*., 527 U.S. 815 (1999) (holding that class certification must be decided prior to standing issues).  Therefore, plaintiff's RICO claims are not incompatible with the FLSA opt in mechanism and should not be dismissed.

### C. RICO Claims Routinely Survive Motions to Dismiss.

Courts in this district have rarely granted motions to dismiss RICO claims. See *Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F.Supp.2d 1270 (S.D.Fla.2009) (holding that at first glance allegation of a violation of the RICO laws, is sufficiently to withstand this motion to dismiss). Accordingly, this Court should deny defendant's motion to dismiss plaintiff's RICO claims.

### D. Plaintiff Has Standing to Assert RICO Claims.

Defendant claims that plaintiff's RICO claims fails because plaintiff did not allege that NGHS's mail and wire fraud caused him injury separate from that incurred by the meal period deduction.  Moreover, Defendant states that Plaintiff did not allege the predicate act of mail or wire fraud with sufficient particularity to grant him standing to assert his claims.

Here, there is no doubt from the complaint that Defendant, is an ongoing organization, functions as a continuing unit, and that there is a nexus between it and the racketeering activity. Defendant is incorrect in arguing that plaintiff has not adequately alleged a pattern of racketeering describing the predicate acts of mail or wire fraud with sufficient particularity. A "pattern of racketeering activity" is defined as at least two predicated acts within a ten-year period. 18 U.S.C. § 1961(5). In addition, plaintiff must show that the predicate acts are "related" and amount to a threat of "continued" criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989). [1]

Under RICO, a predicate act is any of the acts listed in 18 U.S.C. § 1961(1), which includes among other things, activity related to mail fraud. To state a mail fraud claim, plaintiff must adequately allege defendant (1) engaged in a scheme or artifice to defraud for the purposes of obtaining money or property and (2) use of the mail in furtherance of the scheme. See *U.S. v. Yusuf,* 536 F.3d 178, 187 (3d Cir. 2008). Plaintiff has alleged a pattern of racketeering activity involving more than one predicate act which Defendant does not contest (i.e., mailing employment contracts and paystubs to plaintiff and members of the collective class). Plaintiff has also alleged that mailing the payroll checks was part of the overall goal of receiving the financial benefits of the scheme and occurred on a regular basis, thus making each activity related. (Complaint ¶ 102). As part of the normal payroll process, it is clear that there is a threat of continued criminal activity. Plaintiff has specifically alleged each of these

---

[1] Under the Georgia RICO statute, "[i]t is unlawful for any person, through a *1293 pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. 16-14-4(a). Unlike federal civil RICO, the Georgia RICO statute does not require proof of an "enterprise." *Cobb County v. Jones Group, P.L.C*., 218 Ga.App. 149, 460 S.E.2d 516, 520-21 (1995). Rather, under Georgia RICO, the plaintiff needs only establish racketeering activity; that is, "a plaintiff must show that the defendant committed predicate offenses (set forth in O.C.G.A. § 16-14-3(9)) at least twice." *Id.* at 521.

requirements: Defendant's predicate acts were <u>related</u>, because they reflected the same purpose or goal (to retain wages and overtime pay due to Plaintiff for the economic benefit of defendant and members of the enterprise); <u>results</u> (retention of wages and overtime pay); <u>participants</u> (Defendant and other members of the hospital enterprise); <u>victims</u> (Plaintiff and the members of the collective class); and <u>methods of commission</u> (the scheme and other acts described in the Complaint).  The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time.

Having alleged more than enough to show the relatedness of Defendant's predicate acts, plaintiff has sufficiently stated that the checks were misleading in that they did not represent the wages employees were entitled to under the law and were part of the scheme of depriving employees of the wages.

Additionally, plaintiff's complaint clearly sets forth with sufficient particularity that Defendant's scheme involved the intentional, repeated and continued mailing of paychecks, Defendant misrepresented the hours plaintiff worked, and the wages they were owed. (Complaint ¶¶ 98-108).  Clearly, plaintiff has adequately stated the elements required to plead mail fraud.

Nonetheless, in this case, where the violation occurred with respect to tens of respiratory therapists (without accounting for hundreds of nurses and other employees), each pay period, it would not be feasible for plaintiff to list in his complaint, each and every paycheck on each and every payday, for each and every employee. Yet by virtue of the consistent and regular mailing of paychecks each pay period, Defendant has been adequately placed on notice of when the fraud occurred. Based on the complaint's allegations, plaintiff has sufficiently pled a pattern of racketeering activity with particularity to set out a claim under RICO.  Yet, in the event the Court

determines that additional allegations are necessary, plaintiff respectfully request an opportunity to amend his complaint.

Finally, Defendant's argument is flawed in suggesting that the paychecks themselves were not fraudulently misleading, but rather full disclosure of the wages and hours worked. This argument defies logic. Plaintiff's complaint alleges that Defendant failed to pay wages for all time worked. The paychecks mailed confirm that Defendant was paying wages for less than all hours; but they do not disclose the Defendant's intentional scheme to deny pay during mandatory meal "breaks." Just because they are probative to Plaintiff's case does not mean they constitute full disclosure to an unwitting respiratory therapist. Defendant would have this Court believe that mailing a bounced check is not fraudulent if the recipient could determine the payor's bank balance. A fraudulent act does not become *immune* from RICO merely from sealing it in an envelope and affixing a stamp; it becomes *subject* to it.

### III.   PLAINTIFF'S STATE LAW CLAIMS ARE NOT PREEMPTED

Defendant posits that "plaintiff's state law claims, RICO and Georgia RICO claims are preempted by the FLSA and must be dismissed" (Dft.'s Memo at 8). Defendant is wrong. As the 11th Circuit has observed, there is a general presumption against preemption:

> "Federal law can preempt state law in several ways: Congress may expressly preempt state law; the federal scheme may be sufficiently comprehensive to make reasonable the presumption that Congress intended to "leave no room" for state law; or state law may conflict with federal law. *California Federal Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (discussing preemptive effect of Title VII on state law). State law may conflict directly with federal law, such that compliance with both state and federal law is impossible, or state law may create an obstacle to the attainment of federal policy goals. Id. Courts rely on Congress's intent in determining whether a federal statute preempts state law. Id. The

<blockquote>
<blockquote>
presumption is against preemption. See *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981).
</blockquote>

*Broughton v. Courtney*, 861 F.2d 639, 641 (11th Cir.1988) (emphasis added).
</blockquote>

The FLSA itself does not contain any express preemption provision whatsoever, indeed, the Act itself expresses a Congressional intent against preemption:

> "no provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter. No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter."

29 U.S.C. § 218(a).

The issue of preemption is also addressed in a Department of Labor Regulation also entitled "Relation to other laws," which is further contrary to preemption and leaves room for state law.

> "various Federal, *State, and local legislation* require the payment of wages in cash; prohibits or regulates the issuance of scrip, tokens, credit cards, "dope checks" or coupons; prevents or restricts payment of wages in services or facilities; controls company stores and commissaries; outlaws "kickbacks"; restrains assignment and garnishment of wages; and generally, *governs the calculation of wages and the frequency and manner of paying them.* Where such legislation is applicable and does not contravene the requirements of the Act, nothing in the Act, the regulations, or the interpretations announced by the Administrator should be taken to override or nullify the provisions of these laws."

29 C.F.R. § 531.26 (emphasis added)

There is no conflict between O.G.C.A § 34-7-2 requiring employers to pay all wages due for compensable work, and compliance with the FLSA here. Compliance with both state and federal law is not impossible, indeed the Complaint alleges that Defendant committed tortious conduct regardless of whether they complied with the FLSA. If anything, state law tort claims further the attainment of compliance with the FLSA, by giving employers additional incentives to comply with the FLSA if non-compliance also constitutes tortious conduct.

Finally, conflict preemption must "implicate a 'uniquely federal interest,' and wage and hour laws are not uniquely of federal interest. [2] Eleventh Circuit decisions have established that FLSA did not preempt state common law claims. See *Freeman v. City of Mobile, Ala*., 146 F.3d 1292, 1298 (11th Cir. 1998) (holding that 'the FLSA does not preempt state law contract provisions that are more generous than the FLSA demands). See also, *Avery v. City of Talladega* 24 F.3d 1337, 1348 (11th Cir. 1994) (holding that the FLSA does not preempt a state law contractual claim that seeks to recover wages for time that is compensable under the contract but not under the FLSA). The Eleventh Circuit's decisions against FLSA preemption, in *Avery* holding "the district court erred" ruling in favor of preemption, is authoritative in comparison with the line of cases on which defendant relies. Defendant's request to dismiss plaintiff's state law claims as preempted by FLSA should be denied.

---

[2] A precondition to preemption on conflict grounds is that the state law must implicate a "uniquely federal interest." *Boyle v. United Technologies Corp*., 487 U.S. ----, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

**IV. PLAINTIFF'S ERISA CLAIMS SHOULD NOT BE DISMISSED.**

Defendant claims that plaintiff's ERISA claims should be dismissed. However, because plaintiff has standing to assert his ERISA claims and has sufficiently pled that Defendant has breached its fiduciary duty under ERISA, plaintiff's ERISA claims must stand.

**A. Plaintiff Has Standing to Assert ERISA Claims.**

Plaintiff has adequately alleged that he has suffered an injury-in-fact by virtue of Defendant's ERISA violations. Plaintiff does not dispute the requirements for establishing Article III standing: "[a] plaintiff must allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." See *Allen v. Wright,* 468 U.S. 737, 751 (1984)). Further plaintiff is in agreement that to meet ERISA's standing requirements an action may be brought by a participant or beneficiary of the Plan.

Plaintiff has specifically alleged the conduct committed by Defendant: the failure to credit overtime pay as compensation used to determine benefits, and hence deny such benefits. See (Complaint ¶133-134). Because of such failures, plaintiff was injured within the meaning of the statute. Defendant incorrectly claims that plaintiff lacks standing to assert an ERISA claim because there are no allegations that plaintiff is a participant in the ERISA Plan. However, Defendant's argument ignores several paragraphs of the complaint which allege violations of ERISA on behalf of both plaintiff and the putative members of the collective action. These allegations demonstrate that the plaintiff and class members, as participants in the Plan, experienced the same violations. For example:

- The Complaint defines "Plaintiff" as "Rafael Rivera, and "Putative Class Members" as those Respiratory Therapist employees and those employees in other departments of

hospitals operated by NGHS who are or may be (on information and belief) similarly subject to automatic meal break deductions even when they perform compensable work during their meal breaks. (Complaint ¶14). The complaint alleges that plaintiff and other members of the putative class were eligible to participate in the Plan under the Plan's terms, and defendant wrongfully underpaid the Plan. (Complaint ¶ 131-132).

- The Plaintiff and Putative Class Members are similarly situated and their claims, including their ERISA claims, are typical of, and concurrent to, the claims of each other. (Complaint ¶ 59).
- The claims of Plaintiff and Putative Class Members are based on whether Defendant's policy of not crediting employees with their non-reduced weekly wages and correct overtime compensation thence failing to credit their Plan is a violation of ERISA. (Complaint ¶ 130-134).

Such allegations show that both plaintiff and the putative class members are clearly seeking relief for themselves based on their participation in the Plans. Therefore, based on the Complaint's allegations, plaintiff has sufficiently set out a claim under ERISA and has met the requirements for standing. In the event the Court determines that additional allegations are necessary, plaintiff respectfully request an opportunity to amend his complaint.

**B. Plaintiff Was Not Required to Exhaust Administrative Remedies.**

Defendant argues that plaintiff's ERISA claims should be dismissed for failure to allege the exhaustion of administrative remedies. However, plaintiff if can make a clear and positive showing of futility, the "purposes behind the requirement of exhaustion are no longer served" and there is no such exhaustion requirement in this case.

It is well-established law in this Circuit that a plaintiff in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court.  This requirement applies both to breach-of-contract actions, such as the instant case, and to actions based on alleged statutory violations. See *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225–27 (11th Cir.1985).

Exceptions to the exhaustion requirement do exist, most notably "when resort to the administrative route is futile or the remedy inadequate" *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir.1990) (quoting *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980)).  In light of such exceptions, "the decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has clearly abused its discretion." *Curry*, 891 F.2d at 846.

In *Curry*, the Eleventh Circuit set forth an example of evidence of futility which would support a district court's exercise of discretion in excusing a plaintiff's failure to exhaust administrative remedies.  In *Curry,* the court excused the plaintiff, when Defendant controlled the plan's administrative review procedures and exercised its control to deny plaintiff meaningful access to those procedures". See *Curry*, 891 F.2d at 846.

Here, plaintiff can make the same clear and positive showing, because the benefits and review process to which plaintiff and the putative class are entitled, is controlled and influenced by Defendant.  Further, plaintiff presently has no administrative recourse within the Plan for a proper accounting and crediting of such hours because Defendant has not maintained the records to do so (the hospital has not accounted for the unpaid hours worked during training and meal breaks).  As such, no administrative plan proceedings would make plaintiff whole, and such proceedings would be futile.  However, this suit will provide an effective means for determining

the existence of a violation and for providing adequate remedy as the facts require. Requiring administrative exhaustion would not do so, and thus dismissal is not appropriate. Therefore, plaintiff's ERISA claims should not be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss should be denied.

Respectfully submitted,

This 30th day of July 2018.

/s/ Howard P. Slomka
Howard P. Slomka, Esq.
GA Bar #652875

**SLIPAKOFF & SLOMKA, P.C**
*Attorney for Plaintiff*
2859 Paces Ferry Rd. SE.
Suite 1700
Atlanta, Georgia 30339
Tel. 404-800-4017
hs@myatllaw.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| RAFAEL RIVERA, individually, and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff | ) | |
| v. | ) ) | Civil Action No: 2:18-cv-00053-RWS |
| NORTHEAST GEORGIA HEALTH SYSTEM INC., | ) ) | JURY TRIAL DEMANDED |
| Defendant | ) ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Matthew R. Simpson, Esq.
Fisher & Phillips LLP
1075 Peachtree Street, NE. Ste 3500
Atlanta, Georgia 30309
msimpson@fisherphillips.com

This 30th day of July 2018.

/s/ Howard P. Slomka
Howard P. Slomka, Esq.
GA Bar #652875

**SLIPAKOFF & SLOMKA, P.C**
*Attorney for Plaintiff*
2859 Paces Ferry Rd. SE.
Suite 1700
Atlanta, Georgia 30339
Tel. 404-800-4017
hs@myatllaw.com